IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| SECTEK, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01631-GBL |
| | ) | |
| JEANETTE S. DIAMOND, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

THIS MATTER is before the Court on Plaintiff SecTek's Motion for Partial Summary Judgment (Doc. 70), Defendant Jeannette Diamond's Motion to Strike Alleged Facts and Evidence Supporting Plaintiff's Motion for Partial Summary Judgment (Doc. 85), and Defendant Jeannette Diamond's Motion for Partial Summary Judgment (Doc. 100). This case arises from SecTek's purchase of The Diamond Group ("TDG") from Defendant Jeanette S. Diamond, pursuant to a Stock Purchase Agreement ("SPA"). (Doc. 71 at 1). SecTek seeks indemnification for a New Mexico Tax Assessment. (Doc. 71 at 1). The assessment allegedly resulted from a TDG office in New Mexico that Diamond allegedly concealed from both the state of New Mexico and SecTek before she sold TDG. (Doc. 71 at 1–2). There are two issues before the Court.

The first issue is whether summary judgment is appropriate even though discovery had not concluded at the time SecTek moved for summary judgment. The Court **DENIES** SecTek's Motion for Partial Summary Judgment (Doc. 70) for because SecTek moved for summary judgment while discovery was still open, forcing Diamond to oppose the motion on an incomplete record.

1

The second issue is whether there remains a genuine issue of material fact on SecTek's indemnification and fraud claims given that neither party has presented sufficient evidence demonstrating (1) whether the Tax Assessment is a "fixed and established" amount, making SecTek's early indemnification claims acceptable, (2) whether SecTek's failure to respond in the 90-day window substantially burdened Diamond, making the assessment no longer contestable, and (3) whether the allegedly hidden Albuquerque, New Mexico TDG office was actually the cause of the Tax Assessment. The Court **DENIES** both SecTek and Diamond's Motions for Partial Summary Judgment because, the uncertain amount of the Tax Assessment, the options, if any, for reducing the Tax Assessment; the existence of a TDG office in New Mexico, instead of a post; and the true cause of the Tax Assessment are all remaining genuine issues of material fact. Thus, this Court cannot grant summary judgment.

Finally, having denied SecTek's Motion for Partial Summary Judgment, the Court **DENIES as moot** Diamond's Motion to Strike Alleged Facts and Evidence Supporting Plaintiff's Motion for Partial Summary Judgment (Doc. 85).

## I. BACKGROUND

Plaintiff SecTek, a Virginia corporation, provides security services to businesses and governments. (Doc. 67 at 1–2). Until 2012, Defendant Diamond was the owner of TDG, a Texas corporation also in the security business. (Doc. 67 at 2–3). On February 3, 2012 (the "Closing Date"), SecTek, Diamond, and TDG entered into a Stock Purchase Agreement ("SPA") whereby SecTek purchased TDG from Diamond. (*See* Doc 1, 71, 101). Pursuant to the section 3.9 of the SPA, by signing, Diamond warranted that TDG had paid and was up to date on all of its taxes. *See* SPA 3.9.1. On July 10, 2014, SecTek received notice from the New Mexico Tax Department that TDG owed the New Mexico $1,180,483.47 in Gross Receipts Taxes. *See* Doc. 71-1 at 69 (hereinafter "2014 Tax Assessment"). The 2014 Tax Assessment stated that, if SecTek disputed

2

the total amount due, it should contact the New Mexico Department within 90 days. *Id.* On September 26, 2014, the Department issued TDG a statement of the account, which included a month-by-month breakdown of the total gross receipts tax owed per month. Doc. 71-1 at 73. Of the months occurring before the Closing Date, TDG owed $533,085.23, not including taxes and penalties. *Id.*; *see also* Doc. 71 at 8-9. In spite of receiving both items, SecTek did not dispute the Tax Assessment until October 14, 2014, six days after the 90-day dispute period expired. Doc. 101-1 at 35-36. From the time SecTek received the Tax Assessment on July, 14, 2014 until October 24, 2016, SecTek did not inform Diamond of the Tax Assessment, nor attempt to contact her to assist in defending it. *Id.*

SecTek sued Diamond for indemnification, claiming that prior its TDG purchase; Diamond lied to SecTek about TDG's tax status.[1] (Doc. 71 at 2–3). SecTek argued that TDG opened a New Mexico office in 2009 and concealed it from state authorities to avoid the higher tax rate applicable to in-state businesses. (Doc. 67 at 5–6, 9; Doc. 71 at 7–8, 16–19). Because the SPA warranted that TDG was current on its taxes, SecTek argues that Diamond has breached the SPA. (Doc. 71 at 1–3, 16–18). This, SecTek contends, triggers the SPA's indemnification provisions, obligating Diamond to pay the 2014 Tax Assessment and related costs for the period prior to the Closing Date. (Doc. 71 at 13–19). SPA section 5.2 sets forth the procedures for indemnification of a Third-Party Claim. (Ex. A, SPA § 5.2.)

Diamond, on the other hand, argues that indemnification is not required because SecTekhas not provided her with sufficient information detailing the pre-SPA costs under the Tax Assessment. *See* Diamond Decl. Diamond additionally alleges that SecTek's failure to

---

[1] Among other claims not relevant to this partial motion for summary judgment.

dispute the Tax Assessment and notify Diamond of it, within the 90-day dispute window, has substantially burdened Diamond's ability to contest the assessment. *Id.* at 2.

On June 2, 2016, forty-three days before the close of discovery, SecTek moved for partial summary judgment on its claim for indemnification. (Doc. 17; Doc. 71). Diamond filed her Opposition on June 29, 2016, and SecTek filed its Rebuttal on the same day. (Doc 88; Doc. 90). On June 20, 2016 Diamond moved for partial summary judgment. (Doc. 100). On August 4, 2016 SecTek filed its Opposition and on August 11, 2016 Diamond filed her Reply.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

A party moving for summary judgment must show, by citing to the record, that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1)(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48). The court then views the evidence in a light most favorable to the non-moving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson*, 477 U.S. at 255).

A material fact is a fact that might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is material is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

There exists a genuine dispute of material fact when, in light of the evidence, a reasonable jury could return a verdict for the nonmoving party. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Under the 2010 amendments to Rule 56, the evidence supporting a motion for or opposition to summary judgment need not be admissible in its current form. *Jones v. W. Tidewater Regional Jail*, No. 2:15CV316, 2016 WL 2726197, *2–3 (E.D. Va. May 6, 2016). Rather, on a motion for summary judgment, a court considers material that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see also Jones*, 2016 WL 2726197 at *3. A party moving for or opposing summary judgment must rely on "facts that *could be* put in admissible form." *Jones*, 2016 WL 2726197 at *3 (quoting *Wake v. Nat'l R.R. Passenger Corp.*, No. 12–1510, 2013 WL 5423978, *1 (D. Md. Sept. 26, 2013)). More specifically, an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Whittaker v. Morgan State Univ.*, 524 F. App'x 58, 60 (4th Cir. 2013) (unpublished per curiam opinion).

## I.     Analysis

The Court **DENIES** both SecTek's Motion for Partial Summary Judgment (Doc. 70) and Diamond's Motion for Partial Summary Judgment (Doc. 100) for two reasons. First, the Court denies SecTek's Motion for Partial Summary Judgment because SecTek filed its motion prior to the close of discovery, thus, forcing Diamond to respond to the motion before obtaining all relevant discovery. Second, the Court denies both SecTek and Diamond's Motion for Partial Summary Judgment (Doc. 70, 100) because there remains genuine issues of whether: the amount SecTek requests from the Tax Assessment is "fixed and established," SecTek's failure to inform Diamond of the Tax Assessment within the 90-day period substantially burdened Diamond, the Tax Assessment was based on Albuquerque, New Mexico office, and whether such office actually exists or is a security guard post at a contracted location.

### 1.  Because SecTek Moved for Summary Judgment While Discovery was Still Open, Granting SecTek's Motion for Partial Summary Judgment Would Unfairly Prejudice Diamond.

Because SecTek moved for summary judgment while discovery was still open, summary judgment would unfairly prejudice Diamond, forcing her to defend herself on an incomplete record. "[S]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5; *see also Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006). More specifically, if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "As a general rule . . . summary judgment is not appropriate prior to the completion of discovery." *Webster v. Rumsfeld*, 156 F.

App'x 571, 576 (4th Cir. 2005) (unpublished opinion) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Here, SecTek moved for summary judgment on June 2, 2016. (Doc. 17; Doc. 71). Diamond's Opposition was therefore due by June 16, 2016. Diamond filed her Opposition on June 29, 2016, sixteen days before the close of discovery.[2] (Doc. 17; Doc. 88). At that time, according to the declaration of Diamond's attorney, Mark Zimmerman, the state of New Mexico had not fully complied with Diamond's subpoena. (Doc. 88 at 9; Doc. 88-5 ¶ 6). Depositions were still pending, including the state of New Mexico's deposition.[3] (Doc. 88 at 9; Doc. 88-5 ¶¶ 8). Thus, Diamond had to write her Opposition based on an incomplete record. Most significantly, Diamond did not yet have New Mexico's documents and testimony. Given that the state's tax bill is central to this case, Diamond lacked "the opportunity to discover information that is essential to [her] opposition," so "summary judgment [must] be refused." *Anderson*, 477 U.S. at 250 n.5. Therefore, the Court **DENIES** SecTek's Motion for Partial Summary Judgment. (Doc. 70).

### 2. There Remains Genuine Issues of Material Fact in SecTek's Indemnification and Fraud Claims.

The Court denies both SecTek and Diamond's Motion for Partial Summary Judgment (Doc. 70, 100) because there remains genuine issues of whether: the amount SecTek requests from the Tax Assessment is "fixed and established," SecTek's failure to inform Diamond of the Tax Assessment within the 90-day period substantially burdened Diamond, the Tax Assessment was based on Albuquerque, New Mexico office, and whether such office actually exists or is a

---

[2] In its Rebuttal, SecTek did not argue that Diamond's Opposition was untimely. (Doc. 90). The Court will not raise that issue *sua sponte*.

[3] Diamond does not indicate what the subpoena was for or whose depositions were still pending other than New Mexico's. (Doc. 88-5 ¶¶ 6, 8).

security guard post at a contracted location. Even after Defendant had a full opportunity to conduct discovery, summary judgment is inappropriate because both SecTek and Diamond fail to show the absence of a genuine dispute as to material fact. *See Celotex*, 477 U.S. at 323 (1986) (observing that under Fed. R. Civ. P. 56, the movant must show, by citing to the record, that no material fact is genuinely in dispute).

a. *Indemnification Claims*

1. SecTek's Motion

There remains genuine issues of whether the amount SecTekrequests from the Tax Assessment is "fixed and established" and if so, whether SecTek's failure to inform Diamond of the Tax Assessment within the 90-day period substantially burdened Diamond, leaving no avenue for Diamond to defend against the Tax Assessment.

SecTek first alleges that summary judgment should be granted on its indemnification claims because the Tax Assessment was the direct result of Diamond's wrongful payment of lower, out-of-state taxes, rather than the correct, in-state taxes. *See* Doc. 118 at 16. These incorrect tax payments, SecTek alleges, demonstrate that Diamond breached the SPA by misrepresenting its current tax obligations, and thus entitle SecTek to indemnification. *Id.* This argument fails for two reasons.

First, SecTek cites the December 4, 2013 Audit Narrative as evidence that Diamond's tax error, prior to the SPA, is the cause for the Tax Assessment. *Id.* However, this is the extent that SecTek explains either the Tax Assessment or the Audit Narrative, making the minimal evidence it presents, insufficient. *See id.* First, the Audit Narrative correctly notes that the audit is of TDG, however, it notes that the Audit Narrative reflects a tax period from January 1, 2008-September 30, 2013. *See* Audit Narrative, Doc. 118 Exhibit GG. Because SecTek acquired TDG in 2012,

the Audit Narrative captures a wide span of TDG's taxes, both pre and post-SPA. *See id; see also* Doc. 1. Thus, the Audit Narrative makes no distinction between the tax actions of TDG when *Diamond* owned it versus TDG's tax actions once it was acquired by SecTek. Audit Narrative at 1. Accordingly, SecTek's reliance on the Audit Narrative as an indication that the tax assesment results from TDG's *pre*-SPA actions alone, fails. Instead, the vague nature of the Audit Narrative, its vast time frame, and its mention of various New Mexico business locations and posts, only further indicates that there still remains a genuine issue of whether the TDG's pre-SPA tax actions were actually the source of the Audit Narrative, and in turn, the Tax Assessment.

Second, to the extent that SecTek relies on the totals from the 2014 Tax Assessment and the month-by-month statement of accounts as support for his claim that Diamond misrepresented TDG's tax status, this also fails. SecTek's claims that Diamond breached the SPA agreement by failing to pay her taxes, relies on the premises that New Mexico's 2014 Tax Assessment correctly reflects the conditions existing at the time of Diamond's representation in 2012 and that Diamond purposefully misled SecTek. Both of these facts are material to SecTek's claims and still very much in issue. Specifically, Diamond maintains that her 2012 representations were correct, because TDG did not have an office in New Mexico. *See* Diamond Decl. at ¶¶ 2 & 4; *see also* Doc. 81 at 15. The 2014 Tax Assessment however, calculates TDG's past-due gross receipt tax based on the belief that TDG did have businesses in New Mexico. In the end, the question of whether TDG had offices in New Mexico on 2012, and thus Diamond misrepresented TDG's tax status, is a question of fact for the jury. Therefore, because there remains genuine issues of material fact as to whether Diamond breached the SPA through a misrepresentation, the Court

**DENIES** SecTek's Motion for Summary Judgment on its Indemnification claims in Counts 1 and 7.

### 2. Diamond's Motion

Diamond, on the other hand, alleges that summary judgment should be granted in her favor because SecTek's indemnification claims are not ripe, as Virginia statute § 8.01-249(5) requires an actual payment before one can seek indemnification. *See* § 8.01-249(5); Doc. 88 at13. Here however, Virginia courts have recognized "indemnity against liability"—which allows the parties to let their contractual terms govern indemnification, rather than § 8.01-249(5) alone. *See State-Planters' Bank & Trust Co. v. First Nat. Bank*, 76 F.2d 527, 532 (4th Cir. 1935) "Where the indemnity is against liability, the cause of action is complete and the indemnitee may recover upon the contract as soon as his liability has become fixed and established, *even though he has sustained no actual loss or damage at the time he seeks to recover*." (internal citations omitted); *see also Jackson v. Quantrex Integrated Tech. Group, Inc.*, 2002 WL 220340 at *2 (Va. Cir. Ct. Feb 12, 2002) ("The common law has long recognized a unique form of contractual indemnity called "indemnity against liability. . . By definition, it arises on the indemnitor's default, regardless of whether the indemnitee has suffered a loss.") (internal citations omitted). Here, the SPA states that Diamond, as the TDG seller, "shall indemnify, defend, and hold harmless the Buyer [SecTek] from and against all Losses based on . . . *any liability* or obligation relating to the operation of the [TDG] prior to the Closing Date . . . ." *See* SPA at 24-25. Thus, the SPA contractually requires Diamond to indemnify SecTek even for a mere liability, and like *State-Planters*, SecTek therefore has the right to seek such indemnification "*even though he has sustained no actual loss or damage at the time he seeks to recover*." *See State-Planters'*, 76 F.2d at 532. Given this, SecTek does not need to pay the Tax Assessment prior to seeking

indemnification from Diamond[4]; instead, because the Tax Assessment is a liability against SecTek, SecTek's indemnification claims are ripe. *See id.*

Diamond additionally argues that, even if SecTek's indemnification claims are ripe, summary judgment should be granted in her favor because SecTek first breached the SPA by failing to timely notify Diamond of the New Mexico Tax Assessment, concealing relevant facts that materially impaired Diamond's ability to contest that assessment, and refusing to cooperate with Diamond to ensure that the Tax Assessment was properly defended. *See generally* Diamond Declaration. Specifically, Diamond argues that, SecTek's failure "completely precluded [her] from defending TDG or SecTek in the protest of the New Mexico Tax Assessment" and thus, she should not be liable for indemnification. *Id.* In support of her assertion, Diamond provides evidence that SecTek responded to the July 10, 2014 Tax Assessment notification, on October 14, 2014—six days after the 90-day dispute period. *See* Doc. 101-1 at 35-36. The Court also emphasizes the significance that, in addition to missing the 90-day dispute deadline, SecTek failed to even alert Diamond that there was a 90-day dispute period, which SecTek missed. Diamond did not learn that the 90-day dispute period had passed until discovery in this case, nearly two years after New Mexico Tax Assessment was issued.

In response SecTek only contends that Diamond was not materially prejudiced given Bruckner's assertion that, after evaluating the Tax Assessment, Bruckner concluded no tax defense is available.[5] Nevertheless, Diamond's claim that SecTek's failures resulted in a breach

---

[4]In spite of this, for indemnity against liability to apply, the liability at issue must be "fixed and established." *Id.* Here, as this Court has previously stated, the Audit Narrative and 2014 Tax Assessment are insufficient evidence that the tax liability, as currently stated, is "fixed and established," thus giving the Court another reason to deny SecTek's Partial Motion for Summary Judgment.

[5] SecTek also argues that Diamond is not prejudiced by missing the 90-day deadline, where she could have spoken with an auditor and addressed each issue, and instead having to first pay the

of the SPA, still require answering questions of fact that are still at issue. While it is true that the SPA relieves an Indemnifying person (Diamond) of its obligation to the Indemnified person (SecTek) when the Indemnified person's "failure or delay *materially prejudices the defense of the Third Party Claim by the Indemnifying Person,*" Diamond misses the necessary questions of fact that precede interpreting the SPA. *See* SPA 5.2.1. More precisely, all of Diamond's claims regarding SecTek's alleged breach of the SPA, first require reaching factual conclusions about whether SecTek: failed to give her timely notice of the Tax Assessment, neglected to notify Diamond that there was a pending claim at all, missed the 90-day dispute period, concealed that it missed the 90-day dispute period from Diamond, failed to mitigate damages, and refused to allow Diamond to participate in the defense of the Tax Assessment. Because these questions of fact all determine if SecTek breached the SPA, they are all material. As questions that present genuine issues relating to material fact, the Court cannot grant summary judgment. Thus, the Court **DENIES** Diamond's Partial Motion for Summary Judgment on SecTek's indemnification claims, Counts 1 and 7.

### b. Fraud Claims

The Court Diamond's Motion for Partial Summary Judgment on SecTek's fraud claims, Counts 3-6, because there remains a genuine issue of whether a TDG office existed in New Mexico and if so, whether the 2014 Tax Assessment was based on that New Mexico office.

SecTek alleges that TDG opened a New Mexico office in 2009, and that Diamond intentionally concealed it from SecTek and from the state. (Doc. 67 at 5–6, 9; Doc. 71 at 7–8, 16–19). Allegedly, New Mexico issued the 2014 Tax Assessment because TDG had fraudulently paid its taxes at the lower rate applicable to companies without an in-state office. (Doc. 71 at 7–

---

total of taxes owed to then dispute and request a refund. However, this Court need not address this, as it should be decided by the trier of fact.

8). SecTek seeks indemnification for the allegedly unpaid taxes and related costs, arguing that Diamond's concealments were a breach of the stock purchase agreement. (Doc. 71 at 16–19). However, if the New Mexico office did not exist, then there would have been nothing for Diamond to conceal. Diamond would not be in breach, and SecTek would have no right to indemnification. Thus, the existence of the secret New Mexico office is a material fact. Similarly, if the New Mexico office existed but was not the reason for the 2014 Tax Assessment, then SecTek cannot attribute its losses to Diamond's misrepresentations. So that too is a material fact. Because SecTek fails to cite sufficient evidence establishing either of these two material facts, summary judgment must be denied. *See* Fed. R. Civ. P. 56(c)(1)(a); *see also Celotex*, 477 U.S. at 323.

SecTek fails to cite sufficient evidence that the secret New Mexico office existed. SecTek presents Guillermo Chavez's affidavit, which details that Chavez worked at TDG since 2008 and worked at TDG's Albuquerque, New Mexico office. Chavez Aff. At 1-2. Chavez initially states, consistent with Diamond's Declaration, that the Albuquerque office closed in 2010. *Id.* at 2. However, Chavez then states the Albuquerque office moved to a location on Central Avenue, "where it remained until 2015." *Id.* He details that the Albuquerque office "at each separate location, contained one or more desks, storage space, file cabinets for storing employee records, a telephone line in the name of TDG, and a facsimile machine." *Id.* In addition to the Chavez affidavit, SecTek contends that Diamond knew an Albuquerque office existed because Diamond signed checks for Chavez, as a reimbursement for rent at the Albuquerque office. Specifically, SecTek maintains that Diamond should have questioned Chavez's need for reimbursement, given that Diamond allegedly closed the Albuquerque office in 2010.

However, the Court cannot accept SecTek's arguments as sufficient evidence that no genuine issue remains because in her declaration, Diamond maintains that the Albuquerque office did not exist, and instead focuses on TDG's various *posts*. *See* Diamond Declaration at 2. Diamond stated in her affidavit that TDG did not have a New Mexico office after 2009 and that TDG was current on its taxes as when she signed the SPA. (88-1 at ¶¶ 1–5). In light of Diamond's position, SecTek points to the Jack King's alleged instruction to employees to hide the existence of the Albuquerque office and Griggs Bennett's statement that if such an office existed, it should have been disclosed pre-SPA. However, evidence of King's unilateral actions with employees or Bennett's representation does not remove the issue of whether Diamond herself, while signing and executing the SPA, knew that the Albuquerque office existed.

This is especially true given the Chavez himself notes in his affidavit that TDG had "40-60 posts at various locations in New Mexico," *Chavez decl*. at 1, and most importantly, the Tax Assessment itself states that TDG underpaid its New Mexico taxes but does not specifically assert that TDG had an in-state location.[6] (Doc. 71-1 at 88–92). In fact, the Tax Assessment lists *numerous* posts and offices, without specifying how each location is classified. *See id*. Thus, there is not sufficient evidence cited by either party that tends to show that TDG's New Mexico office did or did not exist. This material fact is still at issue and should be decided by the jury.

Nevertheless, even if the secret New Mexico office existed, SecTek fails to cite evidence that the office was the reason for the Tax Assessment. The assessment states the amount demanded but not the reason for the demand. (Doc. 71-1 at 88–92). To be sure, SecTek does cite the affidavit of Wilfred Blood, President and CEO of SecTek. (Doc. 71 at 8; Doc. 72). There,

---

[6] Diamond argues that the Court should not consider the Tax Assessment for the purpose of summary judgment because the assessment has not been authenticated in accordance with Fed. R. Evid. 901. (Doc. 86 at 3–6). The Court need not and does not decide that issue at this stage.

Blood stated that "[a]ccording to information TDG received from" New Mexico, the Tax Assessment resulted from TDG's secret in-state office. (Doc. 72 at ¶ 17). However, Blood did not claim to have personal knowledge of the reasons for which New Mexico issued the assessment. (Doc. 72 at ¶ 17). Rather, Blood's assertion was based on what an unidentified New Mexico official allegedly said. (Doc. 72 at ¶ 17). Because Blood's statement was not made on personal knowledge as required by Rule 56(c)(4), his affidavit cannot establish the basis for the Tax Assessment. *See* Fed. R. Civ. P. 56(c)(4). SecTek does not cite anything else in the record showing that the Tax Assessment resulted specifically from TDG's secret New Mexico office. Even though SecTek hired Suzanne Bruckner, a tax attorney, Brukner could not definitively state that the 2014 Tax Assessment, nor the audit, resulted from the Albuquerque office. *See* Bruckner Dep. at 11. Specifically, Bruckner testified that the New Mexico audit found ten to fifteen business locations in New Mexico without even considering the existence of an Albuquerque Office. *Id.* Bruckner additionally noted that the auditor was not wrong when he found that TDG's *posts* were subject to in-state taxation, as if they were offices. *Id.* at 21-22. Thus, SecTek fails to present sufficient evidence establishing the reason for the Tax Assessment.

In light of this, the evidence presented by both parties fails to sufficiently establish that there either was or was not a secret New Mexico office or that such office was or was not the reason for the 2014 Tax Assessment. Because each of these facts is material, neither party has met its burden to cite evidence showing that neither fact is genuinely disputed. *See* Fed. R. Civ. P. 56(c)(1)(a); *see also Celotex*, 477 U.S. at 323. Accordingly, the Court **DENIES** both SecTek and Diamond's Motions for Partial Summary Judgment (Doc. 70, 100).

*i.*    *Because the Court has denied summary judgment, Diamond's Motion to Strike Alleged Facts and Evidence Supporting Plaintiff's Motion for Partial Summary Judgment (Doc. 85) is moot.*

Diamond's Motion to Strike Alleged Facts and Evidence Supporting Plaintiff's Motion for Partial Summary Judgment (Doc. 85) ("Motion to Strike") is moot because the Court has denied SecTek's Motion for Partial Summary Judgment (Doc. 70). In her Motion to Strike, Diamond raises three arguments. First, she argues that the New Mexico Tax Assessment should be struck because SecTek failed to authenticate it in accordance with Fed. R. Evid. 901.[7] (Doc. 71-1 at 88–92; Doc. 86 at 3–6). Second, Diamond argues that certain statements cited in SecTek's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (Doc. 71) ("Summary Judgment Memorandum") should be struck as inadmissible hearsay. (Doc. 86 at 6–7). Third, Diamond argues that certain allegations in SecTek's Summary Judgment Memorandum (Doc. 71) should be struck because they are not accompanied by a citation to the record. (Doc. 86 at 7–10). These arguments are, in effect, part of Diamond's opposition to SecTek's Motion for Partial Summary Judgment (Doc. 70), which the Court has denied. Accordingly, the Court **DENIES as moot** Diamond's Motion to Strike Alleged Facts and Evidence Supporting Plaintiff's Motion for Partial Summary Judgment (Doc. 85).

### III. CONCLUSION

The Court **DENIES** both SecTek and Diamond's Motion for Partial Summary Judgment entirely. (Doc. 70, 100) First, the Court **DENIES** SecTek's Motion for Partial Summary Judgment (Doc. 70) for because SecTek moved for summary judgment while discovery was still open, forcing Diamond to oppose the motion on an incomplete record.

---

[7] If this issue arises again, the parties should consider the impact of the 2010 amendments to Rule 56. as discussed in *Jones v. W. Tidewater Regional Jail*, No. 2:15CV316, 2016 WL 2726197, *2–3 (E.D. Va. May 6, 2016).

Second, the Court **DENIES** both SecTek and Diamond's Motions for Partial Summary Judgment because, the uncertain amount of the Tax Assessment, the options, if any, for reducing the Tax Assessment; the existence of a TDG office in New Mexico, instead of a post; and the true cause of the Tax Assessment are all remaining genuine issues of material fact.

Finally, having denied summary judgment, the Court **DENIES as moot** Diamond's Motion to Strike Alleged Facts and Evidence Supporting Plaintiff's Motion for Partial Summary Judgment (Doc. 85).

Therefore, it is hereby

**ORDERED** that Plaintiff SecTek's Motion for Partial Summary Judgment (Doc. 70) is **DENIED**.

**IT IS FURTHER ORDERED** Defendant Diamond's Motion for Partial Summary Judgment (Doc. 100) is **DENIED**.

**IT IS FURTHER ORDERED** that Diamond's Motion to Strike Alleged Facts and Evidence Supporting Plaintiff's Motion for Partial Summary Judgment (Doc. 85) is **DENIED as moot**.

**IT IS SO ORDERED.**

**ENTERED** this _19th_ day of August, 2016.

Alexandria, Virginia
08 / 19 / 16

_____/s/_____
Gerald Bruce Lee
United States District Judge